Javier L. Merino, Esq. (NJ Attorney ID No. 078112014)
**THE DANN LAW FIRM, PC**
1520 U. S. Highway 130, Suite 101
North Brunswick, NJ 08902
Phone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com
*Counsel for the Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHANA KAY MEDLEY,** | **COMPLAINT AND JURY DEMAND** |
| Plaintiffs, | |
| v. | JURY DEMAND ENDORSED HEREON |
| **HOMEBRIDGE FINANCIAL SERVICES, INC., SERVICEMAC, LLC, and GOVERNMENT NATIONAL MORTGAGE ASSOCIATION** | |
| Defendant. | |

Plaintiff Shana Kay Medley, by and through counsel, states as follows for her Complaint against Homebridge Financial Services, Inc., ServiceMac LLC, and Government National Mortgage Association (collectively "Defendants").

## PARTIES, JURISDICTION, AND VENUE

1.      Shana Kay Medley (hereafter "Medley" or "Plaintiff") is a natural person residing in Essex County, New Jersey.

2.      Medley is the owner of residential real property, located at and commonly known as 19 Laurel Place Newark, NJ 07106 (the "Home"), which she has occupied as her primary, principal residence for all times relevant to the Complaint.

3.      Homebridge Financial Services, Inc. (hereafter "Homebridge")  is a privately held, non-bank loan company with headquarters in Iselin, New Jersey.

4.      ServiceMac LLC (hereafter "ServiceMac") is an independent mortgage subservicer for lenders, investors and other mortgage servicer, based in Fort Mill, South Carolina, but does business in New Jersey and other states around the United States.

5.      ServiceMac is the servicer of a note executed by Medley (the "Note") and of a mortgage on the Home that secures said Note (the "Mortgage") (collectively, the "Loan"). ServiceMac has been the servicer of the Loan since approximately April 4, 2022.

6.      Homebridge was the predecessor servicer of the Loan.

7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605.1, *et seq.* and the  Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA).

8.    This Court has supplemental jurisdiction to hear all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

9.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

10.    Medley files this action in substantial part to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X").

11.    Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

12.    In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

14.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

15.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA][1]" including, *inter alia*, 12 C.F.R. § 1024.35. 12 U.S.C. § 2605(k)(1)(E); *see also*, *inter alia*, 78 Fed. Reg. 10695, 10737.

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example,* duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10695, 10739 (emphasis added).

16.    The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

17.    Medley asserts claims for relief against Defendants for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

18.    Medley asserts a claim for relief against Defendants for breaches of the specific rules under Regulation X as set forth, *infra*.

19.    Medley has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

20.    Additionally, Medley asserts statutory claims for violations of the New Jersey Consumer Fraud Act, *N.J.S.A.* § 56:8-2, *et seq.* ("CFA") against ServiceMac and Homebridge for unconscionable commercial practices, deception and abusive practices, and misrepresentations, and such action provides for treble damages, as well as reasonable attorneys' fees, and costs.

## FACTUAL ALLEGATIONS

### I.    Allegations related to Homebridge

21.    On or about July 2019, Medley encountered financial difficulties and defaulted on her Loan.

22.    On or about March 2, 2021, Medley filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey,

assigned bankruptcy case number 21-11717 (the "Bankruptcy Matter"), principally for the purpose of curing her Loan arrears. *See* **Exhibit** 1 - Bankruptcy Matter docket.

23.    On or about April 7, 2021, Medley entered into a loan modification with Homebridge in order to cure her default, with her first payment being due on June 1, 2021. *See* **Exhibit** 2 - Loan Modification Agreement.

24.    The Loan Modification Agreement stated that "[a]s of June 1, 2021, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $ 296,871.18, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and amounts capitalized." *See* Exhibit 2.

25.    As Medley cured her Loan arrears through the Loan Modification Agreement, she sought to dismiss the Bankruptcy Matter. On January 24, 2022, the Bankruptcy Court granted Medley's motion to dismiss the Bankruptcy Matter. *See* **Exhibit** 3 - Order Dismissing Case.

26.    Medley timely remitted her payments pursuant to the loan modification agreement, as reflected in her January 3, 2022 mortgage statement which showed a "Past Unpaid Amount" of $0.00 and her next payment being due on March 1, 2022. *See* **Exhibit** 4 - January 3, 2022 mortgage statement.

27.    However, Homebridge then issued a statement dated February 1, 2022 which suddenly claimed that Medley now owed an "Overdue Amount" of $5,316.51

and a total payment due of $7,344.10 for her April 1, 2022 payment due date, even though the statement likewise showed that Medley timely remitted a payment on January 13, 2022 in the amount of $2,207.59. *See* **Exhibit** 5 - February 1, 2022 mortgage statement.

28.     Medley, through counsel, sent Homebridge correspondence dated March 10, 2022 and captioned "Notice of errors pursuant to 12 C.F.R. §§ 1024.35(b)(5) and/or (11) for issuing inaccurate mortgage statements and assessing and claiming inaccurate "Overdue Amounts" due and owing" (the "NOE") to Homebridge at the address designated by Homebridge for receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Homebridge Designated Address") via Certified Mail ("Homebridge NOE #1"). *See* **Exhibit 6**, a copy of Homebridge NOE #1 and tracking information evidencing delivery of Homebridge NOE #1 from the website for the USPS (www.usps.com)

29.     Through Homebridge NOE #1, Medley asserted that Homebridge committed an error related to the servicing of her Loan by assessing the "Overdue Amount" of $5,316.51 even though Medley was on time with her mortgage payments since the loan modification agreement and demanded that Homebridge remove the same. *See* Exhibit 6.

30.     Through correspondence dated April 20, 2022, Homebridge responded to Homebridge NOE #1 (the "Homebridge NOE #1 Response"). *See* **Exhibit 7**, a true and accurate copy of the Homebridge NOE #1 Response.

31.     Through the Homebridge NOE #1 Response, Homebridge claimed that the $5,316.51 Overdue Amount consisted of "***bankruptcy related*** advances" (emphasis added) which were "appropriately charged to [Medley's] account". Homebridge then asserted that "[b]ecause these charges are appropriately charged to [Medley's] account, they will remain on the billing statement - and all future billing statements - until they are paid." *See* Exhibit 7.

32.     In the Homebridge NOE #1 Response, Homebridge likewise enclosed a copy of Medley's transaction history. *See* Exhibit 7.

33.     A close review of the transaction history suggests the $5,316.51 in "Overdue Amount" is comprised of the following fees and charges:

| Date | Description | Charge |
|------|-------------|--------|
| 01/31/2020 | Property Preservation | $15.00 |
| 02/10/2020 | Attorney Advances | $2,082.50 |
| 02/10/2020 | Statutory Expenses | $290.00 |
| 02/10/2020 | Statutory Expenses | $250.00 |
| 02/10/2020 | Statutory Expenses | $0.50 |
| 02/10/2020 | Statutory Expenses | $0.50 |

| | | |
|---|---|---|
| 02/10/2020 | Statutory Expenses | $0.50 |
| 02/10/2020 | Statutory Expenses | $44.00 |
| 03/09/2020 | Property Preservation | $90.00 |
| 03/25/2020 | Miscellaneous Repayment | $15.00 |
| 03/30/2020 | Statutory Expenses | $75.00 |
| 04/15/2020 | Statutory Expenses | $74.50 |
| 04/27/2020 | Property Preservation | $15.00 |
| 05/28/2020 | Property Preservation | $15.00 |
| 07/07/2020 | Property Preservation | $15.00 |
| 07/29/2020 | Property Preservation | $15.00 |
| 09/23/2020 | Property Preservation | $15.00 |
| 10/01/2020 | Property Preservation | $15.00 |
| 10/28/2020 | Attorney Advances | $430.00 |
| 10/28/2020 | Property Preservation | $15.00 |
| 11/30/2020 | Property Preservation | $15.00 |
| 12/22/2020 | Attorney Advances | $375.00 |
| 12/29/2020 | Property Preservation | $15.00 |
| 02/04/2021 | Property Preservation | $15.00 |
| 02/25/2021 | Attorney Advances | $225.00 |
| 02/25/2021 | Property Preservation | $15.00 |
| 02/25/2021 | Statutory Expenses | $0.51 |
| 02/25/2021 | Statutory Expenses | $0.50 |

| 02/25/2021 | Statutory Expenses | $0.50 |
| 05/19/2021 | Attorney Advances | $215.00 |
| 08/05/2021 | Attorney Advances | $967.50 |

34.    Notably, each of these were marked "MTGR REC CORP ADV BA" and otherwise added up to $5,316.51, the exact amount Homebridge suddenly claimed was overdue.

35.    However, the only charges which were *actually* assessed during the pendency of the Bankruptcy Matter (from March 2, 2021 to January 24, 2022) were the 05/19/2021 and 08/05/2021 "Attorney Advances" charges in the amounts of $215.00 and $967.50, respectively. Yet, Homebridge never filed a Notice of Postpetition Fees during the Bankruptcy Matter for these fees and costs[2]. The rest of the charges (totaling $4,134.01) were assessed before she filed the bankruptcy.

36.    Relatedly, the only charge assessed after the June 1, 2021 loan modification was the 08/05/2021 "Attorney Advances" charge in the amounts of $967.50. The rest of the charges (totaling $4,349.01) were assessed before the June 1, 2021 loan modification.

---

[2] *See* Fed. R. Bankr. Proc. 3002.1(c) (requiring such notices to be filed and "served within 180 days after the date on which the fees, expenses, or charges are incurred.")

37.     On or about July 27, 2022, Plaintiff, through counsel, sent Homebridge correspondence consisting of or otherwise comprising a request for information pursuant to, *inter alia*, 12 C.F.R. § 1024.36 ("Homebridge RFI #1"). *See* **Exhibit 8** - Homebridge RFI #1. Through Homebridge RFI #1, Medley requested, amongst other information, the following information regarding the $5,316.51 now marked as "Other Fees" on her April 1, 2022 mortgage statement:

    i.    An itemized breakdown of each fee, charge, or other expense within the Other Fees; and

    ii.   All invoices, receipts, payments, notices, notes, reports, memoranda, statements, entries, emails, electronic messages, or other documents referring to, relating to, or otherwise justifying the Other Fees.

38.     Due to issues related to the delivery of RFI #1[3], the same RFI, now dated August 18, 2022, was resent via USPS Certified Mail return receipt requested on or about August 18, 2022 ("Homebridge RFI #2"). *See* **Exhibit** #9 - Homebridge RFI #2 and USPS Proof of Delivery.

39.     Homebridge received Homebridge RFI #2 at its Designated Address on August 22, 2022. *See* Exh. 9.

---

[3] Specifically, the last update USPS Tracking provided was that it had "Arrived at Post Office" and was "Preparing for Delivery" as of August 4, 2022.

40.     Homebridge failed to provide a written response providing the information requested by and through Homebridge RFI #2 within thirty (30) business days.

41.     Since Homebridge did not provide any response to RFI #2, on or about October 14, 2022, Plaintiff, through counsel, sent correspondence to Homebridge consisting of or otherwise comprising a notice of error alleging that Homebridge committed an error pursuant to 12 C.F.R. § 1024.35(b)(11) by failing to timely respond to Homebridge RFI #2 ("Homebridge NOE #2"). Homebridge NOE #2 was sent via USPS certified mail return receipt requested, and Homebridge received NOE #2 at its Designated Address on October 20, 2022. [Tracking Number: 7015 1520 0001 6616 5862] *See* **Exhibit 10**. – Homebridge NOE #2 and proof of delivery of NOE #2.

## II. Allegations related to ServiceMac

42.     As noted above, in ¶ 5, ServiceMac took over servicing of the Loan from Homebridge on or about April 4, 2022.

43.     On or about July 27, 2022, Medley, through counsel, sent correspondence to ServiceMac consisting of or otherwise comprising a request for information, pursuant to, *inter alia*, 12 C.F.R. § 1024.36, including a request for a payoff statement ("ServiceMac RFI #1"). *See* **Exhibit** 11 - ServiceMac RFI #1 and proof of delivery of the same.

44.    ServiceMac received ServiceMac RFI #1 at the address designated by ServiceMac for receipt of requests for information pursuant to 12 C.F.R. § 1024.36(b) and notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "ServiceMac Designated Address") on August 1, 2022 and was delivered via USPS Certified Mail return receipt requested [Tracking Number: 7022 0410 0002 5263 6747] *See* Exh. 11.

45.    ServiceMac acknowledged receipt of ServiceMac RFI #1 via correspondence dated August 4, 2022. *See* **Exhibit 12** - receipt of received correspondence.

46.    ServiceMac failed to provide a written response providing the information requested by and through ServiceMac RFI #1 within thirty (30) business days of ServiceMac's receipt of the same.

47.    Since ServiceMac did not timely provide a substantive response to ServiceMac RFI #1, on or about September 13, 2022, Plaintiff, through counsel, sent correspondence to ServiceMac consisting of or otherwise comprising a notice of error pursuant to, *inter alia*, 12 C.F.R. § 1024.35 alleging that ServiceMac failed to timely respond to ServiceMac RFI #1 ( "ServiceMac NOE #1"). See **Exhibit** 13 - *ServiceMac NOE #1*. ServiceMac NOE #1 was sent via USPS certified mail requested [Tracking Number: 7015 1520 0001 6616 4599], and ServiceMac received

it at its Designated Address on  September 17, 2022. *See* Exh. 13 - proof of delivery of NOE #2

48.    Through correspondence dated October 25, 2022, ServiceMac stated that it received the "correspondence" and would provide a response within 30 days. *See* **Exhibit 14** - correspondence.

### III. <u>Allegations related to both Homebridge and ServiceMac</u>

49.    On November 28, 2022, Homebridge and ServiceMac, through counsel, issued correspondence to Medley purportedly in response to both ServiceMac NOE #1 and Homebridge NOE #1 (the "11/28/2022 Letter")[4]. *See* **Exhibit 15** - 11/28/2022 Letter.

50.    In the 11/28/2022 Letter, ServiceMac and Homebridge first alleged that "requests for information pursuant to 12 C.F.R. § 1024.36….does not permit requests for documents. Accordingly, your "Requests for Information" are outside the scope of a 12 C.F.R. § 1024.36 request because they are effectively overbroad demands for documents." *See* Exh. 15 at p. 1.

---

[4] While through the letter, counsel initially states "We represent Homebridge…", the letter later purports to respond on behalf of ServiceMac as well. Furthermore, counsel later confirmed he was representing both ServiceMac and Homebridge through the 11/28/2022 Letter.

51.    In the 11/28/2022 Letter, ServiceMac then claimed that they "never actually received [ServiceMac NOE #1] and [Homebridge RFI #2]."[5] *See id.* at p. 2.

52.    With regards to Homebridge RFI #2, Homebridge further stated:

Similarly, the August 18, 2022 Request for Information was not sent to the proper address for submitting such requests. As Medley's monthly billing statements specifically instruct, Requests for Information relating to the Loan should be sent to the Duluth, GA address (excerpt below). Copies of Medley's billing statement for July and August 2022 are attached.

**Notices of Error and Requests for Information**
You have certain rights under federal law related to resolving errors in the servicing of your loan or requesting information about your loan account. If you want to send a Notice of Error or a Request for Information as defined by federal law, it must be sent to our exclusive address at ServiceMac, LLC, PO BOX 100078, Duluth, GA 30096-9377.

*See id.*

53.    The "Duluth, GA address" and the "billing statement for July and August 2022" Homebridge was referring to was ***ServiceMac's*** billing statement and designated address, which is entirely separate from *Homebridge's* billing statement and designated address. It is unclear why Homebridge indicated that Medley was required to send requests for information directed to *Homebridge* to *ServiceMac's* designated address.

54.    Service Mac then contended "[t]herefore, as of August 18, 2022, the Request for Information was not properly mailed. Additionally, as your letter was

---

[5] Throughout the letter, counsel interchangeably refers to Homebridge and ServiceMac in a confusing manner. Plaintiff attempts to comprehend which entity was making specific allegations referenced through the letter.

not sent to the proper address, the time limits for responding to Requests for Information and Notices of Error do not apply." *See id.*

55.    It is unclear why ServiceMac asserted why it never received Homebridge RFI #2, when the correspondence was clearly directed at and mailed to Homebridge.

56.    It is unclear why ServiceMac insisted that Medley was required to send the Homebridge RFI's to ServiceMac's Designated Address.

57.    With regards to ServiceMac NOE #1, ServiceMac claimed that their "mailing vendor failed to submit the correspondence to the appropriate group and, as such, the letter was not actually received." *See id.* However, at the start of the 11/28/2022 letter, ServiceMac conversely stated "[w]e are in receipt of your [ServiceMac NOE #1]. *See id.* at p. 1.

58.    It is unclear how ServiceMac claims on one hand that ServiceMac NOE #1 was never received, but at the same time states it is in receipt of the correspondence.

59.     In the 11/28/2022 letter, Defendants claimed to have provided the information requested by and through ServiceMac RFI #1 through an alleged August 8, 2022 response. *See id.* at p. 2.

60.     Neither Plaintiff nor Plaintiff's counsel received the purported August 8, 2022 correspondence. ServiceMac further failed to enclose the purported August 8, 2022 correspondence in the 11/28/2022 letter.

61.     In the 11/28/2022 Letter, Defendants also provided various documents and information related to the loan, but failed to provide the specific itemization of fees and costs requested in Homebridge RFI #2 and ServiceMac RFI #2.

62.     In the 11/28/2022 Letter, Defendants claimed the remaining items, including specific itemization of fees and costs requested in RFI #1 and RFI #2, are "...*proprietary, confidential, privileged or irrelevant to the servicing of this mortgage loan in accordance with federal law, 12 CFR 1024.36(f)." See id.* at p. 3. (emphasis in original).

### IV. Medley Again Attempts to Resolve through ServiceMac

63.     Medley, through counsel, sent ServiceMac correspondence dated January 17, 2024 and captioned "Notice of errors pursuant to 12 C.F.R. §§ 1024.35(b)(5) and/or (11) for issuing inaccurate mortgage statements and assessing and claiming inaccurate "Overdue Amounts" due and owing" ("ServiceMac NOE #2") to ServiceMac at the ServiceMac Designated Address via Certified Mail (the "ServiceMac NOE #2"). *See* **Exhibit 16**, a copy of ServiceMac NOE #2 and tracking information evidencing delivery of ServiceMac NOE #2 from the website for the USPS (www.usps.com)

64.    Through ServiceMac NOE #2, Medley asserted that Homebridge committed an error related to the servicing of her Loan by assessing the "Overdue Amount" of $5,316.51 even though Medley was on time with her mortgage payments since the loan modification agreement and demanded that Medley remove the same. *See* Exhibit 16.

65.    On an acknowledgement dated March 5, 2024, ServiceMac stated that they needed more time to respond. *See* **Exhibit 17**, a copy of ServiceMac's acknowledgment letter[6].

66.    To date, ServiceMac has failed to issue correspondence containing or consisting of a substantive response to the errors alleged in ServiceMac NOE #2.

67.    As of this date, ServiceMac is still claiming that Medley owes the $5,316.51 in fees and costs, and Homebridge and ServiceMac have still failed to provide the detailed information Medley requested regarding these fees and costs. A copy of Medley's May 1, 2024 Mortgage Statement is attached as **Exhibit 18**.

## IMPACT UPON AND DAMAGES SUFFERED BY MEDLEY

68.    As a result of Defendants' conducted, Plaintiff Medley has been caused to suffer the following damages:

      a.   Medley incurred attorneys' fees and postage costs in preparation of the

---

[6] It is unclear why ServiceMac indicated the letter was "dated January 23, 2024", when ServiceMac NOE #2 was dated January 17, 2024. It appears ServiceMac made a typo.

mailing of Requests for Information (RFIs) and for Notices of Error
(NOEs) for which Medley failed to receive a proper and timely
response;

b.  Unexplained fees and charges have been imposed against Medley and
the Loan due to the random increase in charges in the amount of
$5,316.51;

c.  Medley suffered great emotional distress driven by the continued
reasonable and justified fear of having increased fees and costs without
explanation, which has resulted in frustration, loss of sleep, anxiety,
depression, embarrassment, and other significant emotional distress.

## ADDITIONAL EVIDENCE OF HOMEBRIDGE'S AND SERVICEMAC'S PATTERN AND PRACTICE OF VIOLATIONS OF RESPA

69.    As of the filing of this Complaint, consumers nationwide have lodged
fifty (50) consumer complaints with the CFPB against ServiceMac, LLC,
specifically concerning the issue identified on the CFPB's consumer complaint
database as "Trouble during payment process" related to mortgages. Each such
complaint is filed and cataloged in the CFPB's publicly accessible online database
which can be accessed at the following link: http://www.consumerfinance.gov/data-
research/consumer-complaints/.

70.    As of the filing of this Complaint, consumers nationwide have lodged
ten (10) consumer complaints with the CFPB against ServiceMac, LLC specifically
concerning the issue identified on the CFPB's consumer complaint database as
"Credit reporting, credit report services, or other" related to mortgages. Each such
complaint is filed and cataloged in the CFPB's publicly accessible online database

which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/

71.     As of the filing of this Complaint, Homebridge has three (3) mortgage related offenses and seven (7) consumer protection violations documented against them. This information can be accessed at the following link: https://violationtracker.goodjobsfirst.org/parent/homebridge-financial-services

## COUNT ONE: AGAINST HOMEBRIDGE
### Failure to timely acknowledge and respond to requests for information in violation of 12 C.F.R. §§ 1024.36(c) and (d) and 12 U.S.C. § 2605(k)(1)(E)

72.     Medley repeats and realleges paragraphs 1 through 70 with the same force and effect as though fully set forth herein.

73.     12 C.F.R. § 1024.36(a) provides, in relevant part:

> A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan.

74.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

75.     12 C.F.R. § 1024.36(a) provides a "request for information" is "[a] qualified written request that requests information relating to the servicing of a

mortgage loan" and "a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request."

76.     12 C.F.R. § 1024.36(c) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request."

77.     12 C.F.R. § 1024.36(d)(2)(i)(B)  provides that a servicer must respond to an information request in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1) within thirty (30) days of receipt, excluding legal public holidays, Saturdays, and Sundays.

78.     12 C.F.R. § 1024.36(d)(2)(i)(B)(ii) provides that a servicer may extend the time period for responding by an additional 15 days, excluding legal public holidays, Saturdays, and Sundays, if before the end of the thirty (30) day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing.

79.     12 C.F.R. § 1024.36(d)(1) provides that a servicer must respond to request for information by either "providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or:

Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

80.     12 CFR 1024.36(f)(1)(ii) provides that a servicer is not required to comply with a request for information if the servicer determines the information requested is "confidential, proprietary or privileged".

81.     12 U.S.C. § 2605(e)(2)(A) provides that, no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the receipt from any borrower of any qualified written request and before taking an action with respect to the borrower's inquiry, the servicer shall "make appropriate corrections in the amount of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction…"

82.     12 U.S.C. § 2605(e)(B) provides that after the servicer conducts an investigation, the servicer shall provide the borrower with a written explanation or clarification which includes "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer" and "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower…"

83.     12 U.S.C. § 2605(e)(C) provides that after the servicer conducts an investigation, the servicer shall provide the borrower with a written explanation or

clarification that includes "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer" and "the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower…"

84.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.36(f)(1)(ii) provides that "Confidential, proprietary or privileged information" may include requests for information of the following kind:

> i. Information regarding management or profitability of a servicer, including information provided to investors in the servicer;
>
> ii. Compensation, bonuses, or personnel actions relating to servicer personnel, including personnel responsible for servicing a borrower's mortgage loan account;
>
> iii. Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations; or
>
> iv. information protected by the attorney-client privilege.

85.    12 CFR § 1024.36(f)(1)(iv) provides, in relevant part:

> An information request is overbroad if a borrower requests that the servicer provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances. To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer

shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information.

86.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.36(f)(1)(iv) provides examples of "overbroad or unduly burdensome requests for information", including:

> i. Requests for information that seek documents relating to substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information and documents;

> ii. Requests for information that are not reasonably understandable or are included with voluminous tangential discussion or assertions of errors;

> iii. Requests for information that purport to require servicers to provide information in specific formats, such as in a transcript, letter form in a columnar format, or spreadsheet, when such information is not ordinarily stored in such format; and

> iv. Requests for information that are not reasonably likely to assist a borrower with the borrower's account, including, for example, a request for copies of the front and back of all physical payment instruments (such as checks, drafts, or wire transfer confirmations) that show payments made by the borrower to the servicer and payments made by a servicer to an owner or assignee of a mortgage loan.

87.     Homebridge RFI #2 is an information request deemed submitted because it was sent by Medley's Counsel to Homebridge's designated address for receipt of such and received on August 22, 2022.  *See* Exh. 9.

88.     Homebridge RFI #2 constitutes a "request for information" as defined by 12 C.F.R. § 1024.36(a) since it is a written request requesting information related to the servicing of Medley's mortgage loan.  *See* Exh. 9.

89.     Homebridge violated 12 C.F.R. § 1024.36(c) for failing to provide a written response acknowledging receipt of Homebridge RFI #2 within five (5) business days of receipt, or August 29, 2022

90.     Homebridge violated 12 C.F.R. § 1024.36(d)(2)(i)(B) for failing to provide a response to Homebridge RFI #2 within thirty (30) business days of August 22, 2022, or October 4, 2022.

91.     Medley has suffered actual damages as a direct and proximate result of Homebridge's actions including incurring legal fees and expenses in drafting Homebridge NOE #2, and emotional distress, as further described, *supra*.

92.     Homebridge's actions are believed to be a pattern and practice of behavior in conscious disregard for Medley's rights.

93.     As a result of Homebridge's actions for failure to respond to a borrower inquiry, consisting of a qualified written request, Homebridge is liable to Medley for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

94.     Additionally, Medley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## <u>COUNT TWO: AGAINST HOMEBRIDGE</u>
### Failure to conduct a reasonable investigation in violation of 12 C.F.R. § 1024.35 and 12 U.S.C. §§ 2605(k)(1)(C) and (E)

95.    Medley repeats and realleges paragraphs 1 through 70 with the same force and effect as though fully set forth herein.

96.    12 C.F.R. § 1024.35(a) provides:

A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

97.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower".

98.    Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to a borrower's mortgage loan.

99.    12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

100.    12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must respond to a notice of error from a borrower within thirty (30) days of receipt, excluding legal public holidays, Saturdays, and Sundays.

101.    12 C.F.R. § 1024.35(e)(3)(ii) provides that a servicer may extend the time period for responding by an additional fifteen (15) days, excluding legal public holidays, Saturdays, and Sundays, if before the end of the thirty (30) day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing.

102.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

103.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's

requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

104.   Standard servicer duties are those "typically undertaken by servicers in the ordinary course of business." 78 FR 10696, 10739.

105.   12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

106.   Homebridge NOE #1 constitutes a "notice of error" as defined by 12 C.F.R. § 1024.35(a) because it is a written notice from Medley that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See* Exhibit 6.

107.   Homebridge received NOE #1 at their designated address for receipt of such. *See* Exhibit 6.

108.   Through Homebridge NOE #1, Medey alleged that Homebridge committed errors by issuing improper mortgage statements and improperly claiming the overdue amount of $5,316.51. *See* Exhibit 6

109.   Through Homebridge NOE #1 Response, Homebridge attempted to justify the $5,316.51 in fees due and owing by claiming they were "bankruptcy related advances" which were "appropriately charged to [Medley's] account". *See* Exhibit 7.

110.   A reasonable investigation would reveal that nearly all ($4134.01 of the $5,316.51) of the fees were assessed *before the bankruptcy was even filed*. It is therefore unfeasible for this portion of fees to have been "bankruptcy related".

111.   Meanwhile, for the remainder $1,182.50 in fees which were actually assessed during the Bankruptcy Matter, a reasonable investigation would have likewise revealed that it was improper for Homebridge to demand these fees as it failed to file a Notice of Postpetition Fees and Costs for the same during the Bankruptcy Matter.[7]

112.   Homebridge's failure to properly investigate NOE #1 constitutes a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

---

[7] Fed. R. Bankr. Proc. 3001.2(c) requires a mortgage holder to file a notice itemizing the assessment of any such fees and costs within 180 days after the date in which they are incurred. Here, as the fees were assessed on May 19, 2021 and August 5, 2021, Homebridge was required to file the required notices by November 15, 2021 and February 1, 2022. As Homebridge failed to timely file either notice, it is prohibited from collecting either fee.

113.   Thus, Homebridge has not conducted a "reasonable investigation" into the error as required by 12 C.F.R. § 1024.35(e)(1)(i)(B).

114.   Homebridge has not provided Medley  a written notification that the error has been corrected and its effective date as required by 12 C.F.R. § 1024.35(e)(1)(i)(A).

115.   Homebridge's actions are part of a pattern and practice of behavior in violation of Medley's rights and the rights of other similarly situated borrowers and in violation of Homebridge's obligations under Regulation X of RESPA.

116.   Homebridge's pattern and practice as such is evidenced by their refusal to appropriately acknowledge and respond to and correct the errors Medley alleged through NOE #1 and failure to conduct a reasonable investigation into the issue.

117.   Medley has suffered actual damages as a direct and proximate result of Homebridge's actions including incurring legal fees and expenses anxiety, and emotional distress, as further described, *supra*.

118.   Homebridge NOE #2 constitutes a "notice of error" as defined by 12 C.F.R. § 1024.35(a) because it is a written notice from Medley that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See* Exhibit 10.

119.    Homebridge received NOE #2 at their designated address for receipt of such on October 20, 2022. *See* Exhibit 10.

120.    Through Homebridge NOE #2, Medey alleged that Homebridge committed errors by failing to respond to Homebridge RFI #2.

121.    Through the 11/28/2022 Letter, in response to Homebridge NOE #2, Homebridge first claimed "requests for information pursuant to 12 C.F.R. § 1024.36….does not permit requests for documents. Accordingly, your "Requests for Information" are outside the scope of a 12 C.F.R. § 1024.36 request because they are effectively overbroad demands for documents."

122.    A reasonable investigation into Homebridge NOE #2 would reveal that the very nature of 12 C.F.R. § 1024.36 is to allow a borrower to request documents and information related to their loan.

123.    Through the 11/28/2022 Letter, Homebridge then claimed that Homebridge RFI #2 was not sent to the proper address for submitting such requests because it was not sent to ServiceMac's address.

124.    A reasonable investigation into Homebridge NOE #2 would reveal that a request for information to Homebridge should be sent to Homebridge's designated address, not ServiceMac's designated address.

125.   Homebridge's actions are part of a pattern and practice of behavior in violation of Medley's rights and the rights of other similarly situated borrowers and in violation of Homebridge's obligations under Regulation X of RESPA.

126.   Homebridge's pattern and practice as such is evidenced by their refusal to appropriately acknowledge and respond to and correct the errors Medley alleged through Homebridge NOE #2 and failure to conduct a reasonable investigation into the issue.

127.   Medley has suffered actual damages as a direct and proximate result of Homebridge's actions including incurring legal fees and expenses anxiety, and emotional distress, as further described, *supra*.

128.   As a result of Homebridge's actions for failure to respond to a notice of error and failure to conduct a reasonable investigation into the error, they are liable to Medley for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

129.   Additionally, Medley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

### COUNT THREE: AGAINST SERVICEMAC
**Failure to acknowledge and respond to requests for information in violation of 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(k)(1)(E)**

130.   Medley repeats and realleges paragraphs 1 through 70 with the same force and effect as though fully set forth herein.

131.   ServiceMac RFI #1 is an information request deemed submitted because it was sent by Medley's Counsel to Homebridge's designated address for receipt of such, and received on August 1, 2022.

132.   ServiceMac  RFI #1 constitutes a "request for information" as defined by 12 C.F.R. § 1024.36(a) since it is a written request requesting information related to the servicing of Medley's mortgage Loan.

133.   ServiceMac violated 12 C.F.R. § 1024.36(c) for failing to provide a written response acknowledging receipt of ServiceMac RFI #1 within five (5) days of receipt, or August 8, 2022.

134.   ServiceMac violated 12 C.F.R. § 1024.36(d)(2)(i)(B) for failing to provide a response to ServiceMac RFI #1 within thirty (30) days of August 1, 2022, or September 12, 2022.

135.   By failing to respond, ServiceMac also violated 12 C.F.R. § 1024.36(d)(1) for failing to provide the borrower with the requested information related to her loan and the fees and costs imposed on her and contact information for further assistance, as well as failing to conduct a reasonable search for the requested information in ServiceMac RFI #2 pertaining to the Loan and the fees and costs imposed on Medley.

136.   Medley has suffered actual damages as a direct and proximate result of ServiceMac's actions including incurring legal fees and expenses anxiety, and emotional distress, as further described, *supra*.

137.   As a result of Medley's actions for failure to respond to a borrower inquiry, consisting of a qualified written request, ServiceMac is liable to Medley for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

138.   Additionally, Medley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FOUR: AGAINST SERVICEMAC
### Failure to conduct a reasonable investigation in violation of 12 C.F.R. § 1024.35 and 12 U.S.C. §§ 2605(k)(1)(C) and (E)

139.   Medley repeats and realleges paragraphs 1 through 70 with the same force and effect as though fully set forth herein.

140.   12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

141.   Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower".

142.    Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to a borrower's mortgage loan.

143.    12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

144.    12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must respond to a notice of error from a borrower within thirty (30) days of receipt, excluding legal public holidays, Saturdays, and Sundays.

145.    12 C.F.R. § 1024.35(e)(3)(ii) provides that a servicer may extend the time period for responding by an additional fifteen (15) days, excluding legal public holidays, Saturdays, and Sundays, if before the end of the thirty (30) day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing.

146.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

147.   12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

148.   Standard servicer duties are those "typically undertaken by servicers in the ordinary course of business." 78 FR 10696, 10739.

149.   12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

150.   ServiceMac NOE #2 constitutes a "notice of error" as defined by 12 C.F.R. § 1024.35(a) because it is a written notice from Medley that asserts an error and that includes the name of the borrower, information that enables the servicer to

identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See* Exhibit 16.

151.   ServiceMac received ServiceMac NOE #2 at their designated address for receipt of such on or before January 23, 2024. *See* Exhibit 16.

152.   Through ServiceMac NOE #2, Medley alleged that ServiceMac committed errors by issuing improper mortgage statements and improperly claiming the overdue amount of $5,316.51.

153.   On an acknowledgement dated March 5, 2024, ServiceMac stated that they needed more time to respond. *See* Exhibit 17.

154.   As of the filing of this Complaint, ServiceMac has failed to send, and Medley has not received, a copy of any correspondence containing or consisting of a substantive response to the errors alleged in ServiceMac NOE #2.

155.   ServiceMac failed to perform a reasonable investigation into the errors alleged through the ServiceMac NOE #2 as evidenced by ServiceMac's failure to timely respond to the same.

156.   ServiceMac's failure to respond to ServiceMac NOE #2 constitutes a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

157.   Thus, ServiceMac has not conducted a "reasonable investigation" into the error as required by 12 C.F.R. § 1024.35(e)(1)(i)(B).

158. ServiceMac has not provided Medley a written notification that the error has been corrected and its effective date as required by 12 C.F.R. § 1024.35(e)(1)(i)(A).

159. ServiceMac's actions are part of a pattern and practice of behavior in violation of Medley's rights and the rights of other similarly situated borrowers and in violation of ServiceMac 's obligations under Regulation X of RESPA.

160. ServiceMac s pattern and practice as such is evidenced by their refusal to appropriately respond to and correct the errors Medley alleged through ServiceMac NOE #2 and failure to conduct a reasonable investigation into the issue.

161. Medley has suffered actual damages as a direct and proximate result of ServiceMac's actions including incurring legal fees and expenses anxiety, and emotional distress, as further described, *supra*.

162. As a result of ServiceMac's actions for failure to respond to a notice of error and failure to conduct a reasonable investigation into the error, they are liable to Medley for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

163. Additionally, Medley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT FIVE: AGAINST HOMEBRIDGE AND SERVICEMAC**
**VIOLATION OF N.J.S.A § 56:8-2, THE CONSUMER FRAUD ACT (CFA)**

164.    Medley restates and incorporates all of her statements and allegations contained in paragraphs 1 through 70, in their entirety, as if fully rewritten herein.

165.    The CFA prohibits unlawful practices. Unlawful practices are defined as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby

N.J.S.A. 56:8-2.

166.    In the operation of its business, Homebridge has engaged in the use of unconscionable commercial practices, deception, and misrepresentations as described, *supra*.

167.    Homebridge is a "person" as defined by N.J.S.A. § 56:8-1(d) because Homebridge is a partnership, corporation, company, trust, business entity, or business association.

168.    Homberidge's actions in assessing illegal attorneys' fees and costs against Medley and refusing to correct the same constitute unconscionable commercial practices, deception, and misrepresentations.

169.   Homebridge's misrepresentations that the $5,316.51 in fees assessed against Medley were justified because they were bankruptcy related fees, meanwhile $4,134.01 of the fees were assessed before the bankruptcy was even filed, constitute unconscionable commercial practices, deception, and misrepresentations.

170.   Homebridge's unlawful acts have caused Medley the ascertainable losses described, *supra*.

171.   Medley is entitled to treble the damages caused by Homebridge's violations of the CFA.

172.   In the operation of its business, ServiceMac has engaged in the use of unconscionable commercial practices, deception, and misrepresentations as described, *supra*.

173.   ServiceMac is a "person" as defined by N.J.S.A. § 56:8-1(d) because Homebridge is a partnership, corporation, company, trust, business entity, or business association.

174.   ServiceMac's actions in assessing illegal attorneys' fees and costs against Medley, demanding that Medley pay these fees and costs, and refusing to correct the same constitute unconscionable commercial practices, deception, and misrepresentations.

175.   ServiceMac's unlawful acts have caused Medley the ascertainable losses described, *supra*.

176.   Medley is entitled to treble the damages caused by ServiceMac's violations of the CFA.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Shana Kay Medley respectfully requests that this Court enter an order granting Judgment against Defendants Homebridge Financial Services, Inc. and ServiceMac, LLC.

a.   For actual damages against Homebridge as to all allegations contained in Counts One and Two;

b.   For treble damages against each Homebridge and ServiceMac as to all allegations contained in Count Five;

c.   For actual damages against ServiceMac as to all allegations contained in Counts Three and Four;

d.   For statutory damages of Two Thousand Dollars ($2,000.00) against Defendants for each and every violation of 12 C.F.R. §§ 1024.35, 1024.36, and 12 U.S.C. § 2605(k) as alleged in Counts One through Four;

e.   For costs and reasonable attorney fees against Defendants as to all allegations contained in Counts One through Five; and,

f.  For all other relief this Court may deem just and proper.

Respectfully submitted:

*/s/ Javier L. Merino*
Javier L. Merino
The Dann Law Firm, PC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Shana Kay Medley*

## JURY DEMAND

Plaintiff Shana Kay Medley hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Javier L. Merino*
Javier L. Merino
The Dann Law Firm, PC
*Counsel for Plaintiff Shana Kay Medley*